HEARD APRIL TERM, 1879.

CASE No. 753.

WILLIAM THORPE v. J. G. THORPE AND J. R. ABNEY.

1. On a question of fraud, evidence of other transactions is only admissible as tending, by way of inducement, to unravel the intent of the transaction directly in issue, and where too remote in itself and unsustained by other evidence, it should not be considered.
2. While a mortgage given to secure a valid existing debt may hinder or delay other creditors of the mortgagor, it does not do so within the meaning of the statute, where there is no agreement or understanding on the part of the mortgagee by which, for valuable consideration, his debtor was induced to give the preference, to the injury of other creditors, nor any knowledge by the mortgagee of an intended fraud in the transaction, or collusion therewith.
3. That the creditor was a brother, and had shown kindness to the debtor in other matters, does not justify the conclusion that the debtor may have made the preference with a view to his own ultimate benefit.
4. It is the duty of the judge of the Court of Common Pleas to determine by his own judgment all questions of fact as well as of law, arising in an equity cause. The report of a referee to whom all the issues in such a case were referred, like that of a former commissioner, or the verdict of a jury upon issues ordered out of chancery, is subject to exception, and merely aids the judge in reaching his judgment.

Before COOKE, J., at Charleston, December, 1877.

This was an action brought by plaintiff to foreclose a mortgage upon a house and lot in the city of Charleston, executed by defendant Joseph G. Thorpe ; and John R. Abney, who claimed the property under sheriff's deed, was made a party defendant.

Joseph G. Thorpe, a citizen of Graniteville, S. C., borrowed $1000 from his brother, William Thorpe, a citizen of Pennsylvania, July 25th, 1870, and gave his sealed note, payable at twelve months. In May, 1875, an action was commenced in Edgefield county against D. L. Turner, a former Probate judge, upon his official bond, and against J. G. Thorpe and others, the sureties thereto. In February, 1876, J. G. Thorpe executed a mortgage to his brother upon the lot in dispute, to secure the payment of this note. On March 26th, 1876, judgment was obtained at Edgefield against D. L. Turner, J. G. Thorpe, and others, for $3548.90. A transcript of this judgment was sent to Charleston, and, under it, the lot in that city was sold as the property of J. G. Thorpe in August, 1876, by the sheriff of Charleston county. At that sale notice was given of this mortgage, which had been duly recorded in that county, March 29th, 1876. John R. Abney was the purchaser.

This is the mortgage here sought to be foreclosed, and (J. G. Thorpe not answering,) John R. Abney resists the foreclosure, and claims the property to be his absolutely, upon the ground that the mortgage was fraudulent, and made to delay, hinder and defeat the just claims of the creditors of the defendant, and particularly the plaintiff in the suit against Turner and others.

All the issues of law and fact were referred to James Aldrich, Esq., special referee, to hear and determine. In his report, the referee states the pleadings and the facts, much of which has no bearing upon the points of the case decided by this court. The report continues :

J. G. Thorpe has not only failed to answer the complaint herein, but is a *most willing witness* in favor of plaintiff, and a *most unwilling witness* for John R. Abney. Indeed, to obtain his testimony he had to be called by John R. Abney, and in his evidence he speaks of the proceedings in the case of *State, ex rel.*

*Abney,* v. *Turner* and himself, as an attempt to rob him of his property. Again, J. G. Thorpe was the agent of the plaintiff in all his transactions, including even the management of the suit against himself, to the very payment of the fees of the plaintiff's attorney. See the testimony of plaintiff generally; that of J. G. Thorpe and D. S. Henderson. Plaintiff is bound by whatever J. G. Thorpe did as his agent. *Bump on Fraud. Con.* 203.

Even where the creditor is not aware of the debtor's intention to delay, hinder or defeat the claims of another creditor, but learns enough to excite a suspicion of that fact, or accepts the preference, or the fruits of it, after he has learned that such intention existed in the mind of the common debtor, he will not be allowed to retain the preference, nor can one avail himself of the fraud of another. *Bump on Fraud. Con.* 200; 3 *Strob. Eq.* 263; *Rich. Eq. Cas.* 122.

While relationship between the parties (and here they are brothers) is not a badge of fraud that a secret trust existed, still " they are the persons with whom a secret trust is likely to exist. The same principle applies to all persons with whom the debtor has a confidential relation. [Here the debtor was the agent of the creditor.] Any relationship which gives rise to confidence, though not a badge of fraud, strengthens the presumption that may arise from other circumstances, and serves to elucidate, explain or give color to the transaction." *Bump on Fraud. Con.* 54, 55.

" In deciding upon the *bona* or *mala fides* of such a transaction, much importance is always attached to the fact that the security was taken, not as a pledge for money borrowed at the time, but for an antecedent debt." 2 *Rich. Eq.* 162.

Here the mortgages of May, 1875, were given to secure a debt alleged to have been contracted in May, 1873, and the mortgage in dispute was given in 1876, to secure a debt contracted in 1870.

" The omission of the grantee to testify or to produce the debtor, or *any other important witness,* is *the ground* for an unfavorable presumption, and frequently exercises an important influence upon the final determination of fraud."

Here the wife, son and daughter of plaintiff, and the wife of

J. G. Thorpe, were important witnesses, and were not produced by grantee, plaintiff. They saw plaintiff pay to J. G. Thorpe the $1000 for which the note in dispute was given, and yet they do not testify.

Where a judgment confessed is impeached by a creditor for fraud, it is a circumstance entitled to considerable weight where the transaction is of a doubtful character that it was confessed pending the creditor's suit. *Rich. Eq. Cas.* 410.

I take it the same is applicable to mortgages. In this case the mortgage of 1876, the one involved herein, was given but a few weeks prior to the judgment in that case, and it reached Charleston for record but a week or two before the transcript in the Abney case reached the same point. There seems to be a method in this chance course of action.

I will briefly state some of the facts which indicate fraud: Plaintiff was a workman at $15 per week. If he worked all the time he made $780 per year, and it would require his entire earnings of nearly eight years to make a loan of $6000; and, allowing him but $280 per year to support himself and family, it would take his saving of twelve years to make the loan. $5000 of this money was sent in a registered letter (so J. G. Thorpe says) all the way from Pennsylvania to Graniteville, and yet no receipt, no post-office registry, no witness even pretends to prove this remarkable transaction, save J. G. Thorpe, the debtor and agent, who kept them in his possession and had the mortgage foreclosed upon his own property. I never read of a case similar to this transaction. Again, J. G. Thorpe would give the mortgages and record them at his discretion. Again, when the $6000 mortgages were drawn by H. T. Wright, the $6000 note which they were given to secure was not shown to him.

The $1000 mortgage of 1876 is in J. G. Thorpe's handwriting.

I will now leave this class of evidence, and it is by no means exhausted, and examine the positive testimony as to the *mala fides* of the transaction.

Plaintiff says: "I knew that the property (this in dispute) was advertised for sale before it was sold, and I told *J. G. Thorpe to go ahead, foreclose the mortgage* and save the property." Plaintiff was not anxious to get his money, but wanted the mort-

gage foreclosed for what? To " save the property," and J. G.
Thorpe was the man selected to " save the property."

Plaintiff says J. G. Thorpe had the custody of the mortgage
now in dispute all the time until it was handed to an attorney to
foreclose, and that the mortgage was, in fact, given without his
knowledge, and voluntarily. The agent of J. G. Thorpe, who
gave notice of this mortgage at the sale in Charleston under the
Abney execution, also bid upon the property.

Now I shall look over J. G. Thorpe's testimony. He says:
" I had been sued on Turner's bond, and I gave the mortgage to
William Thorpe, my brother, to secure him. I had a right to
prefer a creditor." " I did not know that judgment was to be
rendered against me at March Term, 1876. I was on the jury here
in Aiken at that time. I asked you [G. W. Croft] how long a
mortgage had to be recorded in. Croft's answer, sixty days. I
said that I thought when a mortgagee was out of the state he
had longer than sixty days. Croft's answer, no. *The next day
I told Croft* that I had sent the mortgage to be recorded."

J. G. Thorpe was asked why he had not recorded the mort-
gage of 1875, which included his Aiken property as well as this
in dispute, but which was recorded in Aiken only. " It would
hurt the sale. * * * I put it in the first mortgage, intending to
record it in Charleston, but changed my mind because of the
sale."

If this is not proof plain of a benefit allowed by plaintiff to J.
G. Thorpe, and that J. G. Thorpe did exercise his powers to
delay, hinder and defeat other creditors, I don't know what is.
J. G. Thorpe says that he got the $5000 on May 18th, 1873; it
was all spent by the following fall, and can't tell where it went,
except in vague generalities. " I don't remember that I men-
tioned to Mr. Wright about being sued on the Turner bond."
In this he is contradicted by H. T. Wright, Esq., who says J.
G. Thorpe mentioned the suit both before and when he drew the
mortgages. " I knew the court was to meet in Edgefield in
March, and apprehended danger. I gave my brother the mort-
gage to protect him."

Here J. G. Thorpe in substance contradicts his statement that
he did not know judgment was to be rendered against him in

March, 1876; he did not *know* but *apprehended* danger. " I did not send this mortgage to be recorded until I heard of the judgment at Edgefield."

Here he contradicts both his other assertions as to knowledge of the judgment.

" I had an *understanding* that I was to live on the premises and pay rent after the sale." This alludes to the Aiken property. " I renewed the $5000 note of my own accord, because I knew of the suit."

H. T. Wright, Esq., says: " J. G. Thorpe, at both Graniteville and Johnston's, told me that he was indebted to his brother, and that he wanted to protect him—to fix it so that his brother could be protected; that he did not want his property to go to the Abney suit. Thorpe said his object was not only to protect his brother, but also to protect his property from the Abney suit." This is too plain for comment. G. W. Croft, Esq., in answer to what J. G. Thorpe said was the conversation between them at the Aiken court in March, 1876, says that J. G. Thorpe told him that " he would make a mortgage and send it to Charleston and have it recorded; and Thorpe is undoubtedly mistaken when he says that he told me he had a mortgage written. I am very positive of this."

This is most important, because the mortgage in dispute purports to have been executed three or four weeks prior to the date of this conversation.

This is all the discussion of the law and facts I shall make, and, after a careful and pains-taking consideration of the great mass of testimony, I feel convinced that the $6000 note and the two mortgages given to secure it are pretensive and fraudulent, and that the mortgage, the cause of this action, was intended to delay, hinder and defeat the creditors of J. G. Thorpe, and particularly the judgment in the case of *State, ex rel. Carey M. Abney,* v. *D. L. Turner and J. G. Thorpe.* I have grave doubts but that this mortgage was intended only to defeat the Abney judgment, and that plaintiff knew all the facts.

I was requested by the attorney of plaintiff to decide as to the validity of the note of 1870 for $1000, given to secure the money said to be borrowed, and which this mortgage was given to

secure.  I might reply as the court did in the cases of *Fryer* v.
*Bryan*, 2 *Hill's Eq.* 56 ; *Dickson* v. *Way*, 3 *Rich. Eq.* 412, and
*Bowie* v. *Free*, 3 *Rich. Eq.* 403, that "a court is not bound to
disentangle a web of fraud, to ascertain if any good material be
mixed in it;" but I will do as requested, though I am not cer-
tain but that my decision will be an *obiter dictum.*

The note must stand, not so much from the evidence in favor
of it, but because there has been no strong evidence against it.
It has not been successfully impeached.

My conclusions of the facts are that the mortgage, the subject
of this action, was given to hinder, delay and defraud the credit-
ors of J. G. Thorpe, especially the judgment in the case of *State,
ex rel. Carey M. Abney*, v. *D. L. Turner and J. G. Thorpe*, and
that the same is null and void.

That the note is valid.  My conclusions of law are that said
mortgage must be and hereby is set aside and made of no effect,
the same being void because of fraud.

That no judgment can be given as to the note, because this
action is for foreclosure of the mortgage only.  It has no demand
for general relief, hence the complaint as to the note must also
be dismissed, but without prejudice to the plaintiff's right to
proceed therein in any manner as he may be advised.

That the complaint be dismissed, and the costs of this suit to
be paid by the defendant, J. G. Thorpe, and the plaintiff, Wil-
liam Thorpe.

The letters referred to are as follows :

"PHILADELPHIA, PA., June 20th, 1874.

"*Dear Brother :*—I have contracting.  I want all the money
I have loaned paid to me as soon as possible; if I cannot get the
money right away, I want it secured by a mortgage of your
property.  My family is all well, and they send regards to you
all.                   Yours, a faithful brother,

"WM. THORPE."

April Term, 1879.

"GRANITEVILLE, S. C., July 3d, 1874.

"*Dear Brother :*—Yours of June 20th was duly received and particularly noticed, and in answer will say that I am willing to give a mortgage on all I have got to secure you in the payment of the money I borrowed from you. If I do not sell the two houses at auction this month or fall in Charleston, I will certainly give you a mortgage to secure the payment of the note for $1000 I gave you in July, 1870. I know I promised to pay it several times before, but Mr. Leitch has tried to sell the two houses so often at auction, and failed to sell them, that I have been disappointed so often and could not help it. I will send you more interest as soon as I can, and you can credit it on the back of the note, as you did the other. I have nothing more of interest to write, only we are all well and hope this may find you all the same; and with best wishes I remain as ever

".Your affectionate brother,

"J. G. THORPE."

The mortgage in dispute remained in possession of J. G. Thorpe until July, 1876, when he turned it over to D. S. Henderson, Esq., Mr. Henderson having shortly before received a letter from Wm. Thorpe, saying it would be turned over, and instructed that it be foreclosed.

To this report of the referee exceptions were filed by the plaintiff as follows :

1. That the referee erred in finding as matter of fact that the mortgage, the subject of this action, was given to hinder and delay the creditors of J. G. Thorpe, and especially the judgment in the case of *Abney* v. *Turner*, and that the same is null and void.

2. That the referee erred in *not* finding as matter of fact that said mortgage was given as a *bona fide* preference to a creditor who held a valid, subsisting and meritorious debt.

3. That the referee erred in finding, as matter of law, that said mortgage must be set aside and made of no effect, the same being void because of fraud.

4. That the referee erred in *not* finding, as a matter of law, that said mortgage was valid, having found that it was given to secure a valid debt, and that the mortgage was really executed,

L

though the effect of said transfer was to delay, hinder or defeat a creditor, yet the preference is valid in law; and even if the mortgage was given "for the express purpose of defeating an execution," yet it is valid, the debt being *bona fide.*

5. That the referee erred, as matter of law, in not giving judgment against the defendant and in favor of the plaintiff, as against J. G. Thorpe for the debt and costs by default, and as against Abney for the costs of trial; for, no matter what is the prayer, the judgment must conform to the facts proven.

6. That said report is in many other respects inconsistent and contrary to the law and the evidence.

On the 21st of December, 1877, the exceptions to the report of the referee were heard at Charleston before his Honor Judge Cooke, and on the same day his Honor announced his decision reversing the findings of fact and conclusions of law of the referee, and afterwards, on the 9th day of January, 1878, filed the following decree :

This cause came on to be heard before me at Charleston, at the present fall term, upon the report of the special referee, James Aldrich, Esq., to whom had been referred all the issues, the testimony taken by him, the pleadings and the exceptions filed to said report by the plaintiff.

The action is for the foreclosure of a mortgage upon the property hereinafter mentioned, found by the referee to be executed on the 17th of February, 1876, by the defendant, J. G. Thorpe, and delivered to the plaintiff. Said mortgage was given to secure a note for $1000, borrowed money, signed by said defendant, J. G. Thorpe, and made payable to the plaintiff. The referee finds, as matter of fact, that the said note is, and was, at the time of the making of the mortgage, a valid and subsisting debt, but that the said mortgage was given to hinder and delay the creditors of J. G. Thorpe, and especially the judgment in the case of *State, ex rel. Abney et al.*, v. *Turner and Thorpe*, (under which the defendant, Abney, claims title by deed subsequent to the recording of the mortgage, the said judgment also having been filed in Charleston county subsequent to said recording,) and that the same is null and void.

The exceptions, taken together, raise two objections to the

report: First, that the referee having found that the debt was valid and subsisting as matter of law, he should have found the mortgage, given to secure said valid debt, valid and binding; and, second, that the referee was not warranted by the weight of the testimony in his finding that the mortgage was given to delay, hinder and defeat the creditors of J. G. Thorpe. After hearing argument from Mr. Henderson in support of the exceptions, and Mr. Croft, *contra*, and upon full consideration of the case, I am constrained to sustain said exceptions.

The debt being valid and subsisting, and the mortgage, the incident thereof, being fully perfected by signature, delivery and record, it follows, as a matter of law, that the same is valid, and as a preference it could only be vacated in the court of bankruptcy, if contrary to the act of congress in such case made and provided.

This disposes of the report, and settles the case in favor of the plaintiff; but, upon a review of the case, I am satisfied that the referee is wrong in his finding of fact that the mortgage is fraudulent, null and void, and said finding is set aside as contrary to the testimony.

It is therefore ordered and adjudged that the said exceptions, as above set forth, be sustained, and the said report, as above indicated, be, and the same is hereby set aside, with costs for the plaintiff, to be taxed by the clerk—the plaintiff's costs, as allowed by law, to be paid out of the sale of the property; the defendant, John R. Abney, the answering and contesting defendant, to pay the referee's fee and all other costs of the action.

In furtherance of this decree, it is adjudged that the mortgaged premises described in the complaint be sold at public auction in the county of Charleston, by the sheriff of said county, upon the following terms, for cash: said sale to be on sale-day, in February next, or some convenient sale-day thereafter, after due legal notice; that the said sheriff execute to the purchaser or purchasers a deed of the premises sold; that, out of the moneys arising from said sale, after deducting the amount of his fees and expenses on such sale, the said sheriff do pay to the plaintiff or his attorney the sum of $1432.60 now due on said note, and          dollars for plaintiff's costs, (the clerk authorized

to fill said blank,) with interest on $1432.60 from this date; that he hold the surplus money, if any there should be, subject to the further order of this court; that he make a report of such sale to this court at its next sitting; that, should there be deficiency as shown by said report, that the defendant, J. G. Thorpe, pay the same to the plaintiff, leave being hereby given for issuance of execution therefor.

It is further ordered and adjudged that the defendants, and all persons claiming under them, be forever barred and foreclosed of all right, title, interest and equity of redemption in said mortgaged premises so sold, or any part thereof.

The following is a description of the mortgaged premises:

[Then follows a description of the premises.]

                                        THOMPSON H. COOKE.
Charleston, S. C., December 21st, 1877.


On the 16th of January, the defendant, Abney, served the following exceptions to the decision of Judge Cooke, to wit:

Take notice, that the defendant, J. R. Abney, excepts to the decision of his Honor Judge Cooke herein, filed on the 9th day of January, 1878, and will move the Supreme Court to reverse said decision on the following grounds, to wit:

1. That his Honor the presiding judge had no jurisdiction to hear exceptions to the report of the referee herein, and his decree is therefore null and void.

2. Because his Honor erred in holding as a matter of fact that the mortgage was not given with the fraudulent intention of defeating the judgment in the case of *State, ex rel. Carey M. Abney et al.*, v. *D. L. Turner et al.*

3. Because his Honor erred in not sustaining the conclusions of fact as found by the referee, adjudging the mortgage mentioned in the complaint to have been given *mala fide*, and with the fraudulent intention to hinder and delay the claims of the creditors of J. G. Thorpe, and particularly the judgment in the case of *State, ex rel. Carey M. Abney et al.*, v. *D. L. Turner et al.*

4. Because his Honor held that, inasmuch as the referee found the note valid, it followed as a matter of law that the mortgage was also valid, for it is respectfully submitted that such ruling

is not the law, but is in direct conflict to the adjudicated cases in this state.

5. Because the decree of his Honor the presiding judge is against the evidence, and contrary to law.

*Messrs. G. W. Croft* and *G. D. Bryan,* for appellant.

1. If the debt is valid, does it follow, as a matter of law, that the mortgage is valid and *bona fide;* or, may not the mortgage be made *mala fide* and with the fraudulent intent of hindering and defeating the right of a creditor, notwithstanding the debt intended to be secured is valid, and therefore null and void? *Bump on Fraud. Con.* 197, 483; 4 *S. C.* 257; 2 *Bail.* 324; *Rich. Eq. Cas.* 410; 9 *Rich.* 106.

2. It is contended that the referee's conclusion as to the facts is the same as the verdict of a jury, and his findings must stand unless they are clearly against the weight of evidence. *Code,* § 296; 6 *S. C.* 312.

3. The evidence before the referee was sufficient to support his findings of fact. They disclosed several badges of fraud. *Bump on Fraud. Con.* 43–57, 202, 203; 1 *Hill* 16; 10 *Rich.* 72; *Rich. Eq. Cas.* 4, 10, 122; 2 *Bail.* 328. His conclusions should be sustained. 6 *S. C.* 140, 310.

*Mr. D. S. Henderson,* for respondent.

As to first exception, see *Code,* § 296. As to fourth exception, see *Rice Eq.* 78; 10 *Rich. Eq.* 413. The security may be void when debt is valid, but only when the facts show an intention of aiding the common debtor. *Rich. Eq. Cas.* 410; 9 *Rich.* 110; *Bump on Fraud. Con.* 186. The facts do not sustain referee's conclusion of law, and the Circuit judge properly overruled the finding. 5 *S. C.* 142; 4 *S. C.* 249; 2 *Hill Ch.* 32; *Bump on Fraud. Con.* 563. And this reversal should stand, notwithstanding the rule laid down in 6 *S. C.* 140; 6 *S. C.* 90, 379.

*Mr. Croft,* in reply.

The Circuit judge had no power to reverse the referee's report. See *Code,* § 296, as interpreted in 41 *How. Pr.* 11. Objection to jurisdiction never comes too late. *Code,* § 171.

July 30th, 1879. The opinion of the court was delivered by

HASKELL, A. J. This was an action brought to foreclose a mortgage of real estate given by J. G. Thorpe to William Thorpe, to secure a pre-existing debt. After the mortgage had been recorded the land was levied on and sold by the sheriff under a lien junior to that of the mortgage. The mortgagor made no answer. The purchaser at sheriff's sale, however, having been made a party defendant, filed his answer, in which he charges that the mortgage and the note it was given to secure, were given in fraud and to hinder, delay and defeat the claims of creditors of the mortgagor. He prays, therefore, that the note and mortgage be set aside as null and void. By an order of the court, all the issues in the action were submitted to a referee. The referee, in his report, finds the note to be a valid and subsisting debt; but he finds that the mortgage "was given to hinder and delay the creditors" of the mortgagor, "and that the same is null and void." His conclusion of law is that the mortgage must be "set aside and made of no effect, the same being void because of fraud." The report, so far as it relates to the mortgage, is not confirmed by the Circuit judge, who decides that the evidence is insufficient to establish fraud or to otherwise affect the mortgage, and foreclosure in the usual form is ordered. The appeal is from such judgment. The evidence which we are obliged to examine in an appeal from the finding of facts in an equity case can be much reduced by inquiring into its relevancy. So much as relates to what is called the $6000 note and the mortgage to secure it, is only admissible as tending, by way of inducement, to unravel the intent in the transactions directly in issue, and is too remote unless sustained by other evidence. That much, therefore, of the evidence need not be separately considered. As regards the $1000 note and mortgage, which are the cause of action, the validity of the note is admitted. There is evidence that the debt had been for some years past due and unpaid, and that the holder of the note, in 1874, urged payment, and that the maker promised to pay as soon as he could sell certain real estate then in the hands of a broker, or, if he failed to sell, that he would secure the note by mortgage. The land is the same which is now in question. Further, there is no evi-

dence of any promise or agreement or understanding on the part of the mortgagee, by which, for valuable consideration, his debtor was induced to give security or preference to the injury of other creditors. Nor is there evidence of any fraud in this transaction by which other creditors have been injured; but, even if there had been fraud as to the other creditors on the part of the mortgagor, there is no evidence of any knowledge of the same, or collusion therewith on the part of the mortgagee. It is difficult to perceive more than the facts that the debtor, J. G. Thorpe, being sued as surety on the bond of a public officer, and apprehending judgment, sought to secure his own creditor, who happened to be his brother, and, to do so, executed a mortgage which he had promised nearly two years before. An effort is made to cast doubt upon the letters which were produced in evidence to prove that J. G. Thorpe had promised this security in 1874, but we are unable to perceive any force in the objection, even if the evidence were much more important to the case. It only strengthens what could have stood without it. Such measures as were pursued by J. G. Thorpe amount merely to a preference. It is entirely settled that such preference is lawful; and while, practically, it may hinder or delay some of the creditors, it does not hinder, delay or defraud creditors in the sense in which those words are used in the statute. *Maples* v. *Maples*, *Rice Eq.* 300. And while a preference to secure a valid debt may, under some circumstances, be impeached, one of the essential grounds is that the preferred creditor has conspired with the debtor at the expense of the other creditors. *Bird* v. *Aitken*, *Rice Eq.* 73. We perceive no evidence of such fact in the preference now in question. There is no merit in the ground that because the creditor was a brother, and had shown kindness to the debtor in other matters, that the debtor may have made the preference with a view to his own ultimate benefit. *Doby* v. *Cureton*, 10 *Rich. Eq.* 411. The referee does not place his conclusion distinctly upon such ground; but that impression seems to have influenced his mind. It is not, however, the report of the referee which is before us on appeal, but the judgment of the court, which, in our opinion, is fully sustained by the evidence.

The other question to be decided is, whether the Court of

Common Pleas has jurisdiction to hear exceptions to the report of a referee of the whole issue. The appellant relies upon Section 296 of the code and *Perry* v. *Sullivan Manufacturing Company*, 6 *S. C.* 312. The case cited does not consider the question of jurisdiction, and we deem it unnecessary to enter into an inquiry as to the whole force and effect of Section 296 of the code. The Court of Common Pleas is clothed with equity jurisdiction. *Const., Art. IV.*, § 16. And in all cases which come within that classification, the judge, in the exercise of his chancery powers, is obliged to determine, by his judgment or decree, all questions of fact as well as of law. There is no difference between the report of a referee in an equity case now and that of a master, commissioner or referee, under the former practice. The report comes up subject to exceptions, and stands for confirmation by the judge. It may be confirmed in whole or in part, or entirely rejected, and the judgment be entered up accordingly. The judge is not more bound by the finding of a referee in a chancery case than by the verdict of a jury, where feigned issues are sent over from the chancery side to the law side of the court. He is not bound by the finding of fact in either mode, but is merely aided in arriving at the conclusion on which his judgment must rest. The action cannot be determined except by a judgment of the court in the exercise of its equity power, and that judgment can only be rendered by a judge of that court. See *Sloan* v. *Westfield*, 11 *S. C.* 445 ; *Charlotte, Columbia and Augusta Railroad Company* v. *Earle et al.*, 12 *S. C.* 53.

The judgment is affirmed. Motion refused.

WILLARD, C. J., and McIVER, A. J., concurred.